CARMEN DELIA SÁNCHEZ, ETC., Plaintiff and Appellee, *v.* TELESFORO DÍAZ MARRERO, Defendant and Appellant.

No. 11528. Argued November 8, 1955.—Decided November 23, 1955.

*Manuel Cruz Horta* for appellant. *Oscar Castro Rivera* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Rafael Edgardo Sánchez, a minor represented by his mother with *patria potestas*, brought an action of filiation and support against Telesforo Díaz Marrero in the Superior Court, Bayamón Part. The action of filiation is based on concubinage and on the uninterrupted possession of the status of a natural child. The defendant denied all the essential facts alleged in the complaint and after a trial on the merits the trial court rendered judgment declaring that the plaintiff is the acknowledged natural son of the defendant and ordering him to pay to the minor an allowance of $10.00 weekly for his support plus costs and $100.00 as attorney's fees. Feeling aggrieved by this judgment the defendant appealed.

We need not discuss all the errors assigned by the appellant. In view of our conclusion, it will suffice to decide (1) whether the fact of paternity was proved; (2) whether concubinage was proved, and (3) whether the uninterrupted possession of the status of natural child was proved. To decide these points we must consider the evidence introduced and to which the court gave credit.

■■ The only evidence presented by the plaintiff consisted of the testimony of his mother Carmen Delia Sánchez.

## PROOF OF PATERNITY AND CONCUBINAGE

This witness testified that at first she and the defendant acted as sweethearts and later indulged in sexual relations; that these relations lasted from August 1950 until about 1953; that they had intercourse in the car and that at times the defendant took her to a house in which they had sexual contact; that during all that time she lived with her parents, that she was single and the defendant married; that when their relations began she was a virgin, losing her virginity with him and becoming pregnant; that the child was born in August 1951; that she never had relations ·with any other man; that at that time she did not know defendant's home address but she did know where his office was located, for he used to take her there; that at different places the defendant kept her in the car all day long; that she never spent the whole night with him, and that they lived each in their own house; that by day, in the morning, he would drive her down the road to places where they could be at ease together, and he would also take her to his house and keep her there in the daytime and nighttime; that this was a house he had rented in Bay View; that he also took her to a house and hotel in Sábana Seca, and that at all those places they had sexual relations; that he took her to dances, to all places, to the dances in "Tres Palmas" and the "Cafetería Guzmán"; that when she lost her virginity she did not bring charges against him because he proposed living together under the same roof and acknowledging the child if she became pregnant and that when she gave birth to her son she paid the expenses at the Bayamón District Hospital with her own savings; that she worked as secretary of the defendant from June 1950 until January 4, 1951; that during all that time the defendant did not support her but when she asked for money he would give her five or ten dollars.

## Proof of the Uninterrupted Possession of Status of a Natural Child

In addition to the witness' testimony as to the fact of paternity, she testified that her son has lived with her all his life; "that in public he has treated him as a son and in front of me he treated him as his son"; that "he has never given him a cent"; that she and her son were acquainted with his relatives; that "all his relatives, as well as his sisters, his nieces and his mother took the child with them, and gave the child presents; that she took the child to his sister's home"; that she has requested the defendant to support their child "and he has never wanted to give him a single cent."

The evidence introduced has established the fact of paternity. The testimony of the plaintiff's mother alone is sufficient. *People* v. *Cáceres*, 65 P.R.R. 344; *People* v. *De Jesús*, 57 P.R.R. 694. The evidence on this particular was contradictory but the trial court settled the conflict against the defendant. Once the paternity is established the plaintiff is entitled to receive support from his father. *Vargas* v. *Jusino*, 71 P.R.R. 362; *Cerra* v. *District Court*, 67 P.R.R. 872; *Falcón* v. *Cruz*, 67 P.R.R. 496.

■ However, we cannot agree with the trial court in that the concubinage between the defendant and the plaintiff's mother was proved. We have repeatedly held that the concubinage contemplated by subdivision 3, § 125 of the Civil Code—31 L.P.R.A., § 504—refers to the condition of a man and a woman living together as husband and wife without being actually married. *López* v. *Rodríguez*, 68 P.R.R. 700; *Bianchi* v. *Heirs of Bianchi*, 67 P.R.R. 557; *Montañez* v. *Rodríguez*, 67 P.R.R. 198. This was not what the plaintiff's evidence established. In holding the contrary the trial court erred.

■ Finally, we shall consider the proof of the uninterrupted possession of the status of a natural child. Whether

under the doctrine of "the strong and convincing proof" [1] or under the doctrine of "the preponderance of the evidence",[2] that introduced by the plaintiff in this case is insufficient to establish the uninterrupted possession of the status of a natural child. The evidence is weaker than that considered in the case of *Figueroa* v. *Díaz, infra.* Aside from the fact of the paternity and of the statements of Carmen Delia to the effect that all of defendant's relatives took the child with them and that defendant's sisters and his mother gave him presents and that she (plaintiff's mother) would take the child to the house of defendant's sister, there is no other proof of voluntary acts of acknowledgment on the part of the father. The testimony of Carmen Delia in describing the direct acts of acknowledgment of the father does not prove any fact. The words "that in public he has treated him as a son and in front of me he treated him as his son" establishes a conclusion. There is no evidence in the record of specific acts of the defendant which may serve as basis for said conclusion. Contrariwise, the plaintiff's evidence reveals that the defendant never provided plaintiff's mother with help of any kind for the expenses of childbirth and never gave the child a cent.

We conclude that the trial court likewise erred in considering that the uninterrupted possession of the status of a natural child had been established.

█ In its findings of facts and conclusions of law the trial court stated "We must add that when these concubinary relations existed, the defendant was married to another woman, but the fruit of the relations between Carmen Delia and Telesforo must, in no way, be a barrier against *the right*

---

[1] *Santiago* v. *Martínez,* 72 P.R.R. 873; *Vargas* v. *Jusino,* 71 P.R.R. 362; *Ortiz* v. *Dragoni,* 59 P.R.R. 14; *Torres* v. *Heirs of Caballero,* 39 P.R.R. 654; *Méndez* v. *Martínez* 21 P.R.R. 238, among others.

[2] *Figueroa* v. *Díaz,* 75 P.R.R. 152.

*flowing from the very birth of the child and who is named Rafael Edgardo Sánchez.* No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. (Constitution of the Commonwealth of Puerto Rico, Art. II, § 1.)" (Italics ours.) If the Constitution has been invoked as the source of the right of the plaintiff to enjoy the rights which the present legislation grants to the children, an error has been committed. Referring to the specific prohibition of discrimination by reason of birth, the Report of the Committee on the Bill of Rights to the Constitutional Convention, submitted on December 14, 1951, sets forth:

"It is intended to eliminate the juridical stigma against children born out of wedlock. All children, in respect of their parents and in respect of the juridical order, are guaranteed equal rights. Illicit unions may and should be forbidden and this provision shall tend to discourage them. But the innocent offspring should come to the world free of juridical discriminations or inferiorities. It is thus required by the principle of individual responsibility, pursuant to which no one is to blame for the acts which he himself did not perform. Although the present legislation already embraces most of the provisions herein set forth, new laws must be enacted. *For inheritance and property purposes the changes resulting from this section shall not be retroactive to births prior to its effectiveness.*" (Italics ours.)

In order to implement this principle of equality of rights of children, Act No. 17 (Spec. Sess. Laws, p. 200) "To establish the equality of rights of children", was approved on August 20, 1952, retroactive to July 25 of that same year 1952.

Plaintiff was born on 1951, that is, prior to the enforcement of the new law. His case is governed by the legislation in force at the time of his birth. Under such legislation and pursuant to the specific facts proved, his action of filiation cannot succeed.

The judgment appealed from will be modified in the sense that the minor plaintiff is only entitled to receive support from the defendant, and as modified it will be affirmed.

Mr. Justice Negrón Fernández and Mr. Justice Belaval dissented.